United States Courts
Southern District of Texas
F I L E D

DEC 06 2019
HOU09744
David J. Bradley, Clerk of Court

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF TEXAS**

**SOUTHERN DIVISION HOUSTON, TEXAS**

LEE PERRY

    Plaintiff

V.

WAYNE, CHRISTIAN INDIVIDUAL, AND WAYNE CHRISTIAN IN HIS OFFICIAL CAPACITY

AS CHAIRMAN OF THE RAILROAD COMMISSION OF TEXAS

ANDDREW WHEELER INDIVIDUAL, AND ANDREW WHEELER IN HIS OFFICIAL CAPACITY

AS ADMINISTRATOR OF THE ENVIROMENTAL PROTECTION AGENCY

SONNY PERDUE INDIVIDUAL, AND SONNY PERDUE IN HIS OFFICIAL

CAPICITY AS SECRETARY OF THE UNITED STATES DEPARTMENT OF AGRICULTURE

THE AMERICAN PETROLEUM INSTITUTE,

MICHAEL SOMMERS, CEO

DAVID A. SCOTT INDIVIDUAL, AND DAVID SCOTT IN HIS OFFICIAL CAPACITY

AS CHAIRMAN OF MISSISSIPPI STATE OIL & GAS BOARD

MARATHON OIL CORPORATION,

LEE TILLMAN CEO

BILL HILL OIL & GAS COMPANY,

RHONDA HAMILTION, PRESIDENT

CONOCO PHILLIPS CORPORATION,

RYAN M LANCE CEO

HILCORP ENERGY COMPANY,

GREG LALICKER CEO

            Defendants

**DISCRIMINATION AND CIVIL RIGHTS COMPLAINT**

CIVIL ACTION NO.   4:19CV4757

1

**VERIFIED DISCRIMINATION AND VIOLATION OF CIVIL RIGHTS COMPLAINT**

Respectfully submitted by Lee Perry Attorney Pro Se P.O. Box 524203 Houston, Texas 77052, Tel. number (713) 876-4571.

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Lee Perry Plaintiff, and petitions this Court, pursuant to the 14th Amendment of the Constitution of the United States of America, and 42 U.S.C. § 1983, and Safe Drinking Water Act Mandate 42 U.S.C. 300j (8) and U.S.C. 300i (4). This action is brought by Plaintiff a Descendant of African American Slaves for violation of Civil Rights and 14th Amendment U.S.C. alleging systematic pattern or practice of discrimination, and denial of rights raising issues of general public importance **under the color of state** by Chairman of state agencies and boards (RRC of Texas, and Mississippi State Oil & Gas Board) ruling on issues for which they have no primary or exclusive jurisdiction, rulings that are wealth based in violation of the equal protection and due process clauses of U.S.C., and 403 U.S. 388 (1971) Bivins claim federal agencies that participated in the pattern or practice of discrimination and denial of rights, Marathon Oil Corporation (Texas Oil & Gas) ConocoPhillips, Hilcorp Energy Company, Bill Hill Oil & Gas Company and the American Petroleum Institute  whose 635 members that have knowingly, intentionally, and recklessly, assisted in the illegal taking of 15 million acres of land and mineral rights owned by the Descendants of African American Slaves in 1900 to currently only 1 million acres indicating discrimination based on race and national origin.

I.

**PARTIES**

1. **Plaintiff** Lee Perry is an individual and Descendant of African American Slaves citizen of the United States of America.

P. O. Box 524203 Houston, Texas 77052

Harris, County

(713) 876-4571

goodoleboy1@peoplepc.com

2. **Defendant** Wayne Christian individual, and Wayne Christian in his official capacity as Chairman of the Railroad Commission of Texas. and may be served by delivering a copy of the summons and of the complaint by registered/certified mail return receipt to Wayne Christian in his official capacity as Chairman of the state agency.

RRC of Texas

P.O. Box 12967

Austin, Texas 78711-2967

2

3. **Defendant** Andrew Wheeler individual, and Andrew Wheeler in his official capacity as Administrator of the Environmental Protection Agency may be served by serving the United States through delivering a copy of the summons and of the complaint to the United States Attorney for the Southern District of Texas, and by sending a copy of the summons and of the complaint by registered/certified mail to the Attorney General of the United States and to defendant.

Environmental Protection Agency

1200 Pennsylvania Avenue, NW

Washington, DC 20460

4. **Defendant** Sonny Purdue individual, and Sonny Purdue in his official capacity as Secretary of the United States Department of Agriculture, and may be served by serving the United States through delivering a copy of the summons and of the complaint to the United States Attorney for the Southern District of Texas, and by sending a copy of the summons and of the complaint by registered/certified mail to the Attorney General of the United States and to the defendant.

United States Department of Agriculture

!400 Independence Ave. SW

Washington, DC 20250.

5.**Defendant** American Petroleum Institute is the largest United States Trade Association established March 20, 1919 representing the oil & gas industry (635 members) in the United States. Defendant has its principle place of business in Washington D.C. United States. Defendant may be served with process by sending a copy of summons and complaint registered/certified mail to Michael Sommers in his official capacity as CEO.

American Petroleum Institute

200 Massachusetts Ave. NW

Washington, D. C. 20001

6. **Defendant** David A. Scott individual, and David A. Scott in his official capacity as Chairman of the State Oil & Gas Board of Mississippi an independent State Agency that regulate policy of oil & gas in the state of Mississippi. Defendant may be served with process by sending a copy of summons and complaint registered/certified mail to David A. Scott in his official capacity as Chairman.

Mississippi State Oil & Gas Board

500 Greymont Ave. Suite E

Jackson, Mississippi 39202

7. **Defendant** Marathon Oil Corporation is a major oil & gas corporation conducting business worldwide and may be served with process by sending a copy of summons and complaint registered/certified mail to Lee Tillman in his official capacity as CEO.

Marathon Oil Corporation

555 San Felipe St.

Houston, Texas 77056

8. **Defendant** ConocoPhillips Corporation is a major oil & gas corporation conducting business worldwide and may be served with process by sending a copy of the complaint and summons registered/certified mail to Ryan M. Lance in his official capacity as CEO.

ConocoPhillips

925 N. Eldridge Parkway

Houston, Texas 770791

9. **Defendant** Hilcorp Energy Company is an independent energy company conducting business in the United States of America and may be served with process by sending a copy of the complaint and summons registered/certified mail to Greg Lalicker in his official capacity as CEO.

Hilcorp Energy Company

111 Travis St.

Houston, Texas 77002

10. **Defendant Rhonda** Hamilton in her official capacity as President of Bill Hill Oil & gas Company and may be served with process by sending a copy of the complaint and summons registered/certified mail to Rhonda Hamilton in her official capacity as President.


## JURISDICTION AND VENUE

This complaint is brought under 42 U.S.C. § 1983 Defendant Wayne Christian in his official capacity as Chairman of the Railroad Commission an Agency of the State of Texas. This Court has jurisdiction of this case under the color of state, equal protection, due process, taking of private property, and life of the 14th. Amendment of the United States Constitution.

Defendant Andrew Wheeler Administrator of the Environmental Protection Agency This Court has jurisdiction under federal 403 U.S. 388 (1971) Bivins claim, Safe Drinking Water Act 42 U.S.C. 300j-8 citizen suit for environmental violations causing risk of injury to the public from threat to contaminate the public drinking water supply, and U.S.C. 300i (4) ongoing violation which is jurisdictional prerequisite to maintenance of Safe Drinking Water claim, and equal protection of the 14th. Amendment of the United States Constitution.

Defendant American Petroleum Institute have knowingly , intentionally, and recklessly participated in the systematic pattern of taking property, land, and mineral rights of the Descendants of African American Slaves in violation of the 1871 Civil Rights Act Section 1983 enacted to keep the KU Klux Klan, companies, and state governments from illegally taking their property, land, and mineral rights. Most of American Petroleum Institute members have their Headquarters in Houston, Texas.

4

Defendant David A. Chairman of the Mississippi State Oil & Gas Board has a residence in Jackson, Mississippi and brings a Diversity issue with jurisdiction being in the residence of the Plaintiff.


Defendant United States Department of Agriculture Secretary Sonny Perdue. This court has jurisdiction under 403 U.S. 388 (1971) Bivins claim, and the 14th Amendment of the U.S. Constitution.

Defendant State of Louisiana Office of Conservation Richard P. Leyoub   This Court has jurisdiction of this case under the color of state violation of 14th. Amendment of due process taking of property United States Constitution, and equal protection of the 14th Amendment of the United States Constitution.

2

Defendant State of Mississippi Office of Conservation This Court has jurisdiction of this case under the color of state violation of Plaintiff's rights under 14th Amendments of the U.S. constitution, Section 1983 Civil Rights.

Because of the Plaintiff's race: Plaintiff includes in this complaint copies of numerous lease agreements approved by Wayne Christian Chairman of the RRC of Texas under the color of state that they never had primary or exclusive jurisdiction to rule on any lease agreement. Each approval made under the color of state created an issue for the taking of property, land and mineral rights, and have caused financial injury to plaintiff as a  Descendant of African American Slaves, and oil & gas operator of wells even when they knew a white operator has committed a criminal act to acquire a lease. The RRC of Texas also caused physical injury to Plaintiff by knowingly, and intentionally exposing Plaintiff to drinking water contaminated with radiation, causing medical problems for which Plaintiff is currently receiving treatment.

3.

CAUSES OF ACTION

VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1866

Plaintiff herein incorporates the preceding paragraphs.  In a November 2018 court hearing at the home office of the Texas Railroad Commission in Austin, Texas Defendant RRC ruled that Defendant Bill Hill Oil & Gas Company could continue to use a fraudulent lease to operate oil producing wells that Plaintiff has a royalty interest in. Plaintiff and the family that have owned both the land and minerals are Descendants of African American Slaves (a protected group as per U.S.C). We had never received any royalty payments, because of the fraudulent lease. Plaintiff, Defendant RRC Commissioners, and Defendant Bill Hill Oil & Gas Company had a copy of the lease approved by Defendant RRC signed, notarized, and filed in Shelby County, Texas Courthouse with volume and page in 2006. Plaintiff and Defendants also had a certified copy of that person supposedly signing the lease death certificate stating that he had died in 1994. Plaintiff stated these facts on the witness stand under oath at the RRC hearing in November 2018.  A man that died in 1994 could not sign a notarized oil & gas lease and file it in 2006.

Defendant RRC abuse of power under the **color of state** goes directly against a 9-0 Texas Supreme Court ruling in 2007 that states the RRC has never had exclusive, or primary jurisdiction to make such rulings.

"It is a crime to intentionally or knowingly file a fraudulent court record or a fraudulent Instrument with the intent to defraud or harm (financial) another per the government penal code Chapter 37 Perjury and

Other Falsifications". It is a state jail felony. This sign is posted on the wall in every Courthouse in the state of Texas and all other states in the United States of America as per **the state constitution and the constitution of the United States.** Plaintiff stated these facts under oath on the witness stand at the RRC hearing in November 2018. Plaintiff has a copy of the transcript as evidence. A copy of the sign, and a copy of the RRC decision are attached as Exhibit 1.

Defendant Oil Company stated that they did not want to be a part of any fraudulent lease. Defendant RRC ruled that they could keep the lease, and still not pay Plaintiff, and the owners of the land and minerals, even though they did not have jurisdiction to rule on the validity of the lease or a criminal act. An Oil Company only have to say that they committed a felony criminal act **in good faith** to get the RRC approval to knowingly, and intentionally take millions of royalty payments from DAAS. **Every case in the index is an example of rewarding criminal behavior that would send an average DAAS citizen to prison**.

Any state administrative court process that allows felony criminal acts to be  ignored, in the decision-making process because the crime was committed in good faith is a direct violation of due process taking of property of the 14th Amendment of the U.S. Constitution DAAS rights.

**This is an example of the power of government to strike fear and anxiety and to intimidate the least powerful among us.**

During discovery plaintiff will provide overwhelming evidence of systemic, routine violations of Descendants of African American Slaves constitutional rights to due process and equal protection, taking of property , and actually keeping billions of dollars by simply stating  I did not know who to pay the royalties to which has caused grave harms, and injustices.

There are too many to list all cases that follow this same systematic pattern. The Index includes Exhibits A-R a partial list of actual cases that **Plaintiff has a royalty interest in** and show the consistency of this pattern of discrimination that has caused the Descendants of African American Slaves that owned 15 million Acres of Land and Mineral Rights in 1900 to only own approximately 1 million acres currently.

A timeline is attached to show important dates and when this systematic pattern of discrimination began and is currently being carried out in current operations today. Exhibit 2.

**Plaintiff is filing this complaint for his proportionate share of the 14 million acres that have been illegally taken by Defendants.**

The practices described above are systematic and constitute.

A pattern or practice of taking of property and monies criminally **under color of state** that is resistant to the full enjoyment of rights granted by the 1871 civil rights act sec, 1983.

A denial to a group of persons of rights granted by 1871 Civils Rights law sec. 1983, which denial raises an issue of general public importance, pursuant to 42 U.S.C.A and have suffered damages as a result of Defendants conduct described above.

The Defendants conduct described above was intentional, willful, and taken in disrespect for the rights of others.

Declares that the Defendants policies and practices, as alleged herein, violate the 1866 Civil Rights Act.

CAUSES OF ACTION

DECLARATORY INJUNCTION

Plaintiff herein incorporates the preceding paragraphs.  Enjoin the Defendants, its officers, employees, agents, and successors, and all other persons in active concert or participation with any of them, from:

Participating or practicing, or causing the criminal taking of property and monies under **color of state** that indicate a preference, limitation, or intention to discriminate based on race.

Requires further injunctive relief against the Defendants as is necessary to effectuate the purposes of the 1866 Civil Rights Act.

Awards such damages as would fully compensate Plaintiff aggrieved by the Defendants discriminatory practices, pursuant to 1866 Civil Rights Act.

Awards punitive damages to Plaintiff aggrieved by Defendants discriminatory actions, pursuant to 1871 Civil Rights Act, Safe Drinking Water Act, and 14th Amendment of U.S. Constitution.

Awards a civil penalty against Defendants in the amount authorized by Civil Rights Act of 1866  and 1871 in order to vindicate the public interest.

Plaintiff further prays for such additional relief as the interest of justice may require.

Lee A. Perry
P. O. Box 524203
Houston, Texas 77952
(713) 876-4571
Pro Se

CERTIFICATE OF SERVICE

I certify that on December 6, 2019, I served a copy of Original Petition on the parties listed

below by registered/certified mail by Summons per Federal Rules of Civil Procedure.

Lee A. Perry
P. O. Box 524203
Houston, Texas 77952
(713) 876-4571
Pro Se

7

CHRISTI CRADDICK, *Chairman*
RYAN SITTON, *Commissioner*
WAYNE CHRISTIAN, *Commissioner*



RANDALL D. COLLINS, *Director*

# RAILROAD COMMISSION OF TEXAS
## HEARINGS DIVISION

### OIL & GAS DOCKET NO. 06-0307914

**COMPLAINT OF WAYMOND NOBLES THAT BILL HILL OIL & GAS, INC. (OPERATOR NO. 070844) DOES NOT HAVE A GOOD FAITH CLAIM TO OPERATE THE J.E. NOBLES ET AL. UNIT (LEASE NO. 10150), CENTER (SARATOGA) FIELD, SHELBY COUNTY, TEXAS**

### PROPOSAL FOR DECISION

**HEARD BY:**

Jennifer Cook – Administrative Law Judge
Karl Caldwell – Technical Examiner

**PROCEDURAL HISTORY:**

| | |
|---|---|
| Complaint Filed – | September 28, 2017 |
| Notice of Deficiency – | November 29, 2017 |
| Hearing Request Form sent – | January 2, 2018 |
| Notice to Set Hearing letter sent – | January 19, 2018 |
| Notice of Hearing – | February 7, 2018 |
| Hearing Date – | March 8, 2018 |
| Close of Record – | May 31, 2018 |
| Proposal for Decision Issue – | June 21, 2018 |

**APPEARANCES:**

For Complainant Waymond Nobles -
Annie Briscoe
Attorney at Law

For Respondent Bill Hill Oil & Gas, Inc. -
Michael E. Starr
*Coghlan, Crowson*

10

## Table of Contents

I.     Statement of the Case ........................................................................... 3

II.    Jurisdiction and Notice ......................................................................... 3

III.   Applicable Legal Authority .................................................................... 4

IV.    Discussion of Evidence ......................................................................... 4

    A.   Summary of Complainant's Evidence and Argument.................................... 4

    B.   Summary of Respondent's Evidence and Argument ................................. 6

    C.   Summary of Commission records regarding wells discussed at hearing........................................................................................... 6

        1.   The J.E. Nobles et al. Unit, Commission Lease No. 10150, Well No. 1 (i.e. Plugged Well 1) ........................................ 7

        2.   The J.E. Nobles Lease, Commission Lease No. 11828, Well No. 2 (i.e. Nobles Well 2) ........................................... 7

        3.   The Valton Greer Lease, Commission Lease No. 05653 ............... 8

        4.   The Nobles Lease, Commission Lease No. 257367 (i.e. the Nobles Gas Unit)........................................................... 8

V.     Examiners' Analysis .............................................................................. 8

VI.    Recommendation, Proposed Findings of Fact and Proposed Conclusions of Law................................................................................................. 10

## I.    Statement of the Case

Waymond Nobles ("Complainant") filed a complaint ("Complaint") claiming that Bill Hill Oil & Gas, Inc. ("Respondent") does not have a good faith claim to operate the J.E. Nobles Et Al. Unit, Lease No. 10150 and the J.E. Nobles Lease, Lease No. 11828, both in the Center (Saratoga) Field in Shelby County, Texas. Respondent only operates one well on the leases, which is also the only productive well on the leases. Complainant requests the Commission find Respondent does not have a good faith claim such that Complainant can seek another operator to operate the well at issue.

Complainant asserts Respondent does not have a good faith claim because the contractual lease regarding Complainant's mineral interests is invalid. Complainant also argues Respondent has acted in bad faith regarding the leases and well at issue. Complainant requests the Commission find Respondent does not have a good faith claim to operate the well.

Respondent asserts it has multiple contractual leases with other mineral rights owners covering the well at issue in this case. These contractual leases establish a good faith claim to operate the well. Moreover, Respondent asserts the contractual lease covering Complainant's mineral interests is in full force and effect; rather, the parties have a lease dispute, the determination of which is outside the Commission's jurisdiction, and does not defeat Respondent's good faith claim.

The Administrative Law Judge and Technical Examiner (collectively "Examiners") respectfully submit this Proposal for Decision ("PFD") and recommend the Railroad Commission ("Commission" or "RRC") deny Complainant's request. The Examiners find Respondent has provided a reasonably satisfactory showing of a good faith claim to operate the well at issue. The Examiners find that while there may be a bona fide contractual dispute between the parties, the determination of such a dispute is outside the jurisdiction of the Commission, and the dispute does not defeat Respondent's showing of a good faith claim.

## II.    Jurisdiction and Notice[1]

Sections 81.051 and 81.052 of the Texas Natural Resources Code provide the Commission with jurisdiction over all persons owning or engaged in drilling or operating oil or gas wells in Texas and the authority to adopt all necessary rules for governing and regulating persons and their operations under the jurisdiction of the Commission.

On February 7, 2018, the Hearings Division of the Commission sent a Notice of Hearing ("Notice") to Complainant and Respondent setting a hearing date of March 8, 2018.[2] Consequently, all parties received more than 10 days' notice. The Notice contains (1) a statement of the time, place, and nature of the hearing; (2) a statement of the legal

---

[1] The hearing transcript in this case is referred to as "Tr. at [page(s)]." Complainant's exhibits are referred to as "Complainant Ex. [exhibit no]." Respondent's exhibits are referred to as "Respondent Ex. [exhibit no.]."

[2] *See* Notice of Hearing issued February 7, 2018.

authority and jurisdiction under which the hearing is to be held; (3) a reference to the particular sections of the statutes and rules involved; and (4) a short and plain statement of the matters asserted.[3] The hearing was held on March 8, 2018, as noticed. Complainant and Respondent appeared at the hearing.

## III.    Applicable Legal Authority

Complainant alleges the Commission's current operator of record, Respondent, does not have a good faith claim to operate the well. A "good faith claim" is defined in the Texas Natural Resources Code and in Commission rule as:

> A factually supported claim based on a recognized legal theory to a continuing possessory right in the mineral estate, such as evidence of a currently valid oil and gas lease or a recorded deed conveying a fee interest in the mineral estate.[4]

## IV.    Discussion of Evidence

Complainant provided the testimony of three witnesses and approximately twenty-two exhibits. Respondent provided the testimony of one witness and seven exhibits.

At the hearing, Complainant expressed confusion as to the identity, operational status and location of wells on tracts he has mineral interests in that are operated by Respondent. He originally complained about the J.E. Nobles Et Al. Unit, Lease No. 10150, Well No. 1. Based on the evidence and Commission records, this well ("Plugged Well 1") was plugged in 1986. The operator at the time of plugging was Bill Hill, an individual, not Respondent. After Bill Hill passed away, Respondent took over Mr. Hill's remaining operations. Mr. Hill's remaining operations included operating the J.E. Nobles Lease, Lease No. 11828, Well No. 2 ("Nobles Well 2"), which is the only well at issue in this case.[5] A more thorough discussion of these wells is in subsection C below.

### A.    Summary of Complainant's Evidence and Argument

Complainant asserts Respondent does not have a good faith claim because the lease regarding Complainant's mineral interests is invalid. Complainant also argues Respondent has acted in bad faith regarding the leases. Complainant requests the Commission find Respondent does not have a good faith claim to operate.

Complainant's first witness was Edna Nobles Walker. The property at issue is about 75 acres in Shelby County, which was acquired by her family in 1904 and passed down to various family members over the years.[6] The parties did not dispute that Complainant owns mineral rights on tracts where both the Plugged Well 1 and Nobles Well 2 are located.

---

[3] See TEX. GOV'T CODE §§ 2001.051, 052; 16 TEX. ADMIN. CODE §§ 1.42, 1.45.
[4] TEX. NAT. RES. CODE § 89.002(11); 16 TEX. ADMIN. CODE § 3.15(a)(5).
[5] The parties agreed there was sufficient notice that the scope of the hearing encompassed both wells. Tr. at 126-128.
[6] Tr. at 19-21; Complainant Ex. T.

Ms. Walker described a lawsuit between her family and Respondent regarding the contractual leases covering the Nobles Well 2. One of the issues she complained of is that the contractual leases had blank spaces where the amount of royalty should have been. She was also confused as to which wells were producing or plugged and claimed she was unable to obtain information regarding wells and production. A primary concern was that she was unable to determine what amount of royalties Complainant was owed.[7]

Complainant's second witness was Mr. Lee Perry. He is an operator registered with the Commission and has been in the business of oil and gas operations for approximately 46 years. He also performs work as a joint venture auditor, environmental auditor and fraud specialist. He has inspected the property where Complainant has mineral interests. He observed a well labeled "Well No. 2" producing during his visits. He could find no indication that there was a second well on the property. He also opined that Respondent should not have been allowed to become an operator of wells on the property because the underlying contractual leases are invalid since they failed to include a monetary amount for the royalty payment. He has never seen a lease that has a blank where the royalty amount should be. He does not believe there were actually two wells; he believes there was one well changed from "Well No. 1" to "Well No. 2."[8]

Complainant's final witness was Mr. Waymond Nobles. He filed the Complaint on behalf of his parents.[9] He believes his family has not been treated fairly. He expressed concern regarding the contractual leases that had blanks where the royalty amount was supposed to be. While he was offered a settlement in the lawsuit, he does not believe he has been provided sufficient information to ascertain whether the settlement offer is reasonable. He has tried to obtain information about the wells by asking for information from Respondent, reviewing documentation and looking at Commission records. Mr. Nobles acknowledged that other members of his family did agree to settle the court lawsuit and signed ratifications of eight leases.[10]

Complainant expressed confusion regarding a *Ratification and Memorandum of Joint Operating Agreement* regarding a Nobles Gas Unit, Nobles 1H Well ("Nobles Gas Unit") filed in Shelby County. One of the leases within this unit is identified as the "Greer, Valton" lease.[11]

Complainant also expressed confusion as to a Commission record showing a "Valton Greer" lease ("Valton Greer Lease") operated by Bill Hill. Complainant requested an inspection of this lease. According to the inspection report, there is no wellhead visible on the lease and records indicate the well was plugged in September 2006. Respondent had no knowledge about this lease or well.[12]

---

[7] Tr. at 21-35.
[8] Tr. at 35-49.
[9] Both his parents have passed away. Tr. at 50.
[10] Tr. at 49-75.
[11] Tr. at 94 - 97; Complainant Ex. N.
[12] Tr. at 96-97; Complainant Ex. V.

### B.    Summary of Respondent's Evidence and Argument

Respondent asserts it has multiple contractual leases with other mineral rights owners covering the wells at issue in this case. These leases establish a good faith claim to operate the well at issue. Moreover, Respondent asserts the contractual lease covering Complainant's mineral interests is not invalid; rather the parties have a lease dispute, the determination of which is outside the Commission's jurisdiction and does not defeat Respondent's good faith claim.

Respondent's only witness was Ms. Rhonda Hamilton. Bill Hill was her father and she is president of Bill Hill Oil and Gas, Inc. She formed the corporation after her father died. Prior to that, her father operated as a sole proprietorship. The only well Respondent operates is the Nobles Well 2. It was a well Mr. Hill recompleted and it was productive. It had been abandoned by the prior operator. That was the only well her father was operating at the time of his death. She incorporated Respondent to continue operating that one well.[13]

Ms. Hamilton testified that Respondent has been involved with litigation with members of the Nobles family since 2012. Respondent settled with approximately 15 people. The family members who settled ratified the eight leases that either they, their parents or grandparents signed with Mr. Hill. All the leases were transferred from Mr. Hill to Respondent. All of the Nobles family members owned undivided interests in some portion of the minerals beneath the 75-acre tract. Nobles Well 2 is producing and Respondent is paying the settling Nobles family members royalties.[14]

Ms. Hamilton testified that Plugged Well 1 has been plugged. According to Commission records, Plugged Well 1 was plugged in July 1986.[15] Ms. Hamilton testified Respondent never operated Plugged Well 1.[16]

### C. Summary of Commission records regarding wells discussed at hearing

In an effort to obtain clarity regarding the leases and wells discussed, at the hearing the Examiners notified the parties that they planned to take official notice of Commission records regarding Plugged Well 1, Nobles Well 2, the Nobles Gas Unit and the Valton Greer Lease. No one objected at the hearing. In a letter dated May 15, 2018, a copy of the records was sent to each party with an opportunity to object. The records were attached to the letter as Examiners' Exhibits 1-6. No party filed an objection.[17]

Official notice was taken of records concerning Bill Hill. Bill Hill registered with the Commission as an operator on September 14, 1981. He registered as a sole proprietor

[13] Tr. at 76-78, 102-103.
[14] Tr. at 78-81; Respondent Ex. 6-7.
[15] Tr. at 81-85; Respondent Ex. 1-2.
[16] Tr. at 85-87.
[17] Tr. at 124-125, 136; Examiners Ex. 1-6.

15

and was given operator number 386840. His status at the Commission is inactive as of June 30, 2014.[18]

Respondent, Bill Hill Oil & Gas, Inc., registered with the Commission as an operator on June 10, 2014. Respondent registered as a corporation and was given Commission operator number 070844. Respondent's status at the Commission is active. Respondent is the operator of record for one well, the Nobles Well 2.[19]

### 1.  The J.E. Nobles et al. Unit, Commission Lease No. 10150, Well No. 1 (i.e. Plugged Well 1)

Plugged Well 1 is a distinct well from Nobles Well 2. It is almost due east of Nobles Well 2 on the same tract. Its API number is 419-30044 and its Commission lease number is 10150. It was completed on April 18, 1975. On about November 30, 1975, a Commission Form W-2 *Oil Well Potential Test, Completion or Recompletion Report and Log* was filed concerning the well by operator Dear Minerals, Inc. On about September 1, 1981, a Commission form titled *Producer's Certificate of Compliance and Authorization to Transport Oil and/or Casinghead Gas from an Oil Lease or Gas and/or Condensate from a Gas Well* was filed by Bill Hill, transferring Plugged Well 1 from Dear Minerals, Inc. to Mr. Hill as operator of record. Mr. Hill became the operator of the well effective September 8, 1981. On September 2, 1986, a Commission Form W-3 *Plugging Record* was filed for the well. Plugged Well 1 is the only well on Lease No. 10150. The lease was removed from the Commission's schedule in 1986 because the well had been plugged and abandoned.[20] Commission production data records only go back to 1993. There are no production records for this well.

### 2.  The J.E. Nobles Lease, Commission Lease No. 11828, Well No. 2 (i.e. Nobles Well 2)

Nobles Well 2 is a distinct well from Plugged Well 1. It is almost due west of Plugged Well 1 on the same tract. Its API number is 419-30386[21] and its Commission lease number is 11828. The well was originally completed as a dry hole by Marshall Expl. Inc. on December 24, 1981. On about July 14, 1984, Mr. Hill filed a Commission Form W-1 *Application for Permit to Drill, Deepen, Plug Back or Re-Enter* for what is referred to as Well No. 2 on Lease No. 10150. However, Mr. Hill filed a Commission Form W-2 *Oil Well Potential Test, Completion or Recompletion Report and Log* for Nobles Well 2 on November 8, 1985, indicating it was a re-entry of a well that was drilled by Marshall Expl. Co. The Commission lease number for this well was changed to 11828. There were various operators of the well after 1995, including associates of Mr. Hill. Mr. Hill[22] was the operator of record from December 31, 1985 to October 1, 1991. Production records for

---

[18] Examiner Ex. 2.

[19] Examiner Ex. 1; Examiner Ex. 3 at 000069.

[20] Examiner Ex. 4.

[21] For some period of time, Commission records contained an incorrect API number for Well 2. In a letter dated February 8, 2006, the Commission corrected the API number from the incorrect number of 419-80038 to the correct number of 419-30386. Examiners Ex. 3 at 000066.

[22] During some of this period, the operator's registered name was Bill Hill and Associates.

Nobles Well 2 dating back from 1993[23] show that Bill Hill most recently became the operator of record in July 1996. The well has been productive since that time and was transferred to Respondent in April 2014. Nobles Well 2 is the only well on this Commission lease.[24]

### 3. The Valton Greer Lease, Commission Lease No. 05653

The Valton Greer Lease has one well, referred to as Well No. 2. The Commission lease number is 05653 and the well's API number is 419-30015. The Valton Greer well is almost due east from Nobles Well 2 and appears to be on the same tract. The well was originally drilled in 1972. On about October 9, 1973, a Commission Form W-1 *Application for Permit to Drill, Deepen, Plug Back or Re-Enter* was filed for the well by Dear Minerals, Inc. as the record operator at the time. On about May 14, 1973, a Commission Form W-2 *Oil Well Potential Test, Completion or Recompletion Report and Log* was filed for the well. Another Form W-2 was filed on around May 30, 1975, also by Dear Minerals, Inc. Production records for the Valton Greer Lease well dating back from 1993 show that Bill Hill was the operator of record from June 1996 to February 1998. Mr. Hill was also the last operator of record starting in March 2005. There has been no reported production since September 2006. On about September 27, 2006, a Commission Form W-3 *Plugging Record* was filed for the well. At the time, Bill Hill was the operator. The well was removed from the Commission's schedule on December 31, 2006 because it was plugged and abandoned.[25]

### 4. The Nobles Lease, Commission Lease No. 257367 (i.e. the Nobles Gas Unit)

The Nobles Lease (i.e. Nobles Gas Unit) has one horizontal well, referred to as Well No. 1H. That is the only well on the lease. The Commission lease number is 257367 and the well's API number is 419-31577. The Nobles Gas Unit well is southeast of the Nobles Well 2 and appears to be on the same tract. On about April 12, 2010, Chesapeake Operating, Inc. was issued a drilling permit for the well to drill it as a new well. Production records for the lease began in June 2010. Chesapeake Operating, Inc. and then Chesapeake Operating, L.L.C. were the operators of record from June 2010 until January 2015. The well has been and continues to be productive. The current operator of record is Weatherly Oil & Gas, LLC.

## V.    Examiners' Analysis

The Examiners recommend Complainant's requested relief be denied and the Commission find Respondent provided a reasonably satisfactory showing of a good faith claim to operate the Nobles Well 2.

---

[23] Commission online production records go back until 1993.
[24] Examiner Ex. 3.
[25] Examiner Ex. 5.

Oil & Gas Docket No. 06-0307914
Proposal for Decision
Page 9 of 12

Complainant alleges Respondent does not have a good faith claim to operate the wells on the leases at issue. The scope of the complaint includes Plugged Well 1 and Nobles Well 2. Plugged Well 1 was plugged in 1986. Respondent only operates the Nobles Well 2, which is the only productive well on the leases.

A good faith claim is defined in Commission rule as:

A factually supported claim based on a recognized legal theory to a continuing possessory right in the mineral estate, such as evidence of a currently valid oil and gas lease or a recorded deed conveying a fee interest in the mineral estate.[26]

The origin of the "good-faith claim" requirement comes from the Texas Supreme Court in *Magnolia Petroleum Co. v. Railroad Commission of Texas*.[27] In discussing the Commission's authority to grant a drilling permit, the Court stated:

The function of the Railroad Commission in this connection is to administer the conservation laws. When it grants a permit to drill a well it does not undertake to adjudicate questions of title or rights of possession. These questions must be settled in the courts.[28]

The Court went on to state:

Of course, the Railroad Commission should not do the useless thing of granting a permit to one who does not claim the property in good faith. The Commission should deny the permit if it does not reasonably appear to it that the applicant has a good-faith claim in the property. If the applicant makes a reasonably satisfactory showing of a good-faith claim of ownership in the property, the mere fact that another in good faith disputes his title is not alone sufficient to defeat his right to the permit; neither is it ground for suspending the permit or abating the statutory appeal pending settlement of the title controversy.[29]

In sum, the Commission does not adjudicate questions of title or right to possession, which are questions for the court system.[30] A showing of a good faith claim does not require an applicant to prove title or a right of possession. It is sufficient for an applicant

---

[26] 16 TEX. ADMIN. CODE 3.15(a)(5).

[27] *Id.; see Magnolia Petroleum Co. v. R.R. Comm'n of Tex.*, 170 S.W.2d 189, 191 (Tex. 1943); *see also Trapp v. Shell Oil Co.*, 198 S.W.2d 424, 437-38 (Tex. 1946); *Rosenthal v. R.R. Comm'n of Tex.*, 2009 WL 2567941, *3 (Tex. App.—Austin 2009, pet. denied); *Pan Am. Petroleum Corp. v. R.R. Comm'n of Tex.*, 318 S.W.2d 17 (Tex. Civ. App.—Austin 1958, no writ).

[28] *Magnolia Petroleum Co. v. R.R. Comm'n of Tex.*, 170 S.W.2d 189, 191 (Tex. 1943).

[29] *Id.* at 191 (emphasis added).

[30] *Magnolia Petroleum Co. v. R.R. Comm'n*, 170 S.W.2d 189, 191 (Tex. 1943); *see also Trapp v. Shell Oil Co.*, 198 S.W.2d 424, 437-38 (Tex. 1946); *Rosenthal v. R.R. Comm'n of Tex.*, 2009 WL 2567941, *3 (Tex. App.—Austin 2009, pet. denied) (mem. op.); 56 Tex. Jur. 3d *Oil and Gas* § 737, *Adjudication of title to property and contract rights* (June 2016 Update).

to make a reasonably satisfactory showing of a good faith claim, and another's good faith dispute of title or possessory interest will not defeat the good faith claim.[31]

Respondent provided an exemplar contractual lease and ratification of lease covering the Nobles Well 2. Additionally, Respondent has seven more leases with corresponding ratifications with other mineral rights owners covering the well. Even if Complainant's lease covering the well were invalid, these other contractual leases are sufficient to establish a good faith claim.

The litigation regarding Complainant's mineral rights is ongoing. The Commission has no jurisdiction to determine whether the underlying contractual lease is invalid or not. Complainant's lease dispute with Respondent does not defeat Respondent's good faith claim. The issue of whether or not Respondent has acted in good faith or not regarding lease obligations is encompassed within the private dispute Complainant has with Respondent. It is not relevant to the "good faith claim" analysis performed within in the regulatory framework of the Commission.

For these reasons, the Examiners conclude based on the evidence provided, Respondent has made a reasonably satisfactory showing of a good faith claim. Examiners recommend Complainant's requested relief be denied.

## VI.    Recommendation, Proposed Findings of Fact and Proposed Conclusions of Law

Based on the record in this case and evidence presented, the Examiners recommend Complainant's requested relief be denied, the Commission find that Respondent provided a reasonably satisfactory showing of a good faith claim to operate the Nobles Well 2, and the Commission adopt the following findings of fact and conclusions of law.

### Findings of Fact

1.    Waymond Nobles ("Complainant") filed a complaint that Bill Hill Oil & Gas, Inc. ("Respondent") does not have a good faith claim to operate the J.E. Nobles Et Al. Unit, Lease No. 10150, Well No. 1 ("Plugged Well 1") and the J.E. Nobles Lease, Lease No. 11828, Well No. 2 ("Nobles Well 2") in the Center (Saratoga) Field in Shelby County, Texas. Complainant requests that the Commission find Respondent does not have a good faith claim such that Complainants can seek another operator to operate the wells at issue.

2.    Complainant asserts Respondent does not have a good faith claim because the contractual lease regarding Complainant's mineral interests is invalid. Complainant also argues Respondent has acted in bad faith regarding the leases and wells at issue.

---

[31] Id.

3.    Plugged Well 1 was plugged in 1986. The operator of record when it was plugged was Bill Hill (an individual). Respondent never operated Plugged Well 1. Plugged Well 1 is the only well on Commission lease number 10150.

4.    Respondent became the operator of record for Nobles Well 2 in April 2014. Nobles Well 2 has been productive since Respondent became the operator of record. Nobles Well 2 is the only well on Commission lease number 11828. Nobles Well 2 is the only well Respondent operates.

5.    On February 7, 2018, the Hearings Division of the Commission sent a Notice of Hearing ("Notice") to Complainant and Respondent setting a hearing date of March 8, 2018. Consequently, all parties received more than 10 days' notice. The Notice contains (1) a statement of the time, place, and nature of the hearing; (2) a statement of the legal authority and jurisdiction under which the hearing is to be held; (3) a reference to the particular sections of the statutes and rules involved; and (4) a short and plain statement of the matters asserted. The hearing was held on March 8, 2018, as noticed. Complainant and Respondent appeared at the hearing.

6.    Respondent has an active Commission Form P-5 *Organization Report*.

7.    Respondent has eight contractual leases with corresponding ratifications with other undivided mineral rights owners covering the Nobles Well 2, giving Respondent a right to operate the Nobles Well 2.

8.    The litigation regarding Complainant's mineral rights is ongoing. The Commission has no jurisdiction to determine whether the lease is invalid or not. Complainant's lease dispute with Respondent does not defeat Respondent's good faith claim. The issue of whether or not Respondent has acted in good faith or not regarding lease obligations is encompassed within the private dispute Complainant has with Respondent.

9.    Respondent has demonstrated a reasonably satisfactory showing of a good faith claim to a continuing right to operate the Wells.

## Conclusions of Law

1.    Proper notice of hearing was timely issued to appropriate persons entitled to notice. *See, e.g.,* TEX. GOV'T CODE §§ 2001.051, 052; 16 TEX. ADMIN. CODE §§ 1.42, 1.45.

2.    The Commission has jurisdiction in this case. *See, e.g.,* TEX. NAT. RES. CODE § 81.051.

Oil & Gas Docket No. 06-0307914
Proposal for Decision
Page 12 of 12

3.      At the hearing in this matter, Respondent provided a reasonably satisfactory showing of a good faith claim to continue operating the Nobles Well 2. 16 TEX. ADMIN. CODE § 3.15(a)(5).

4.      Complainant's good faith dispute with Respondent does not defeat Respondent's reasonably satisfactory showing of a good faith claim.

5.      Complainant's request for relief should be denied.

### Recommendations

        The Examiners recommend the Commission enter an order finding Respondent demonstrated a good faith claim to operate the Nobles Well 2 and denying Complainant's request for relief.

Respectfully,

Jennifer Cook
Administrative Law Judge

Karl Caldwell
Technical Examiner

**EXHIBIT 2**

TIMELINE

1856 The Texas heirship law to determine who get the property of a person that dies intestate without a will. It is still the current heirship law in Texas. A similar law also exists in the oil producing states of Louisiana, Oklahoma, Mississippi, and Arkansas where Plaintiff own mineral interest.

1866-1871 13th, 14th, 15th Amendments added to the United States Constitution, and 1871 Civil Rights Bill to bring the Descendants of African Slaves into the United States as a citizen with the same rights as any other citizen of the United States.

1901 First major oil discovery in the United States (Spindletop, Texas). Everyone is beginning to learn the value of land that has oil under it. Most of the land in that area was owned by Descendants of African American Slaves. The County Courthouses of Jefferson, Chambers, and Liberty all were set on fire to destroy the deed records. If you look at a map of land ownership before the fire it shows the tracts owned by Descendants of African American Slaves. The new map to determine the ownership after the fire had each tract that was owned by a DAAS instead of his name in its place was unknown owner. DAAS females lost thousands of acres of land. The men that were lynched lost their land and mineral rights.

 1901 DAAS owned 15 million acres of land as per U.S. Census. As per current U.S. Census DAAS only own 1 million acres.

May 21, 1915 Texas Supreme Court rule landowner to be absolute owner of oil & gas in place.

**March 21, 1919 Texas legislature enact statue requiring the conservation of oil & gas, forbidding waste, and giving the RRC jurisdiction.**

**March 20, 1919 The American Petroleum Institute was formed whose members are all oil & gas companies or service companies that help with government policy on how to manage this new wealth. They have a current membership of over 600.**

**From this point forward members of the American Petroleum Institute and State Agencies under the color of state have knowingly, intentionally and systematically used a pattern of always in good faith robbing DAAS of 14 million acres of land and mineral rights. Even in defiance of the 14th Amendment of the U.S. Constitution, the 1871 Civil Rights Act Section 1983, and a  9-0 Texas State Supreme Court ruling. It must be also pointed out that they never report the criminal violations having no respect for the law.**

23

**EXHIBIT A**

## 1. FEAR, ITIMIDATION, AND LOSS OF LIFE

Plaintiff Lee Perry herein incorporates the preceding paragraphs. John Doe personally witnessed the Ku Klux Klan coming to his home in the middle of the night calling his father to the front door, shooting him in the leg, dragging him to a tree in the front yard, and hanging him. The Ku Klux Klan came back to the house and set it on fire. John Doe was 6 years of age at the time. He and another 8-year-old sister had already run out the back door and hid in the woods. They watched their mother and six brothers and sisters burn to death. They ran to another black family house nearby and told them what happened. The Black woman at that house hid them and later took them to her sister's house in Houston, Texas. Her sister accepted them as her own and raised them. The land that was taken is still owned by the family that took it over 100 years ago. I have the county court documents to prove what happened. That property was taken in violation of the 14th. Amendment. The local racist government knew what happened, and still allowed the white family to keep the land. The RRC with knowledge of these circumstances and criminal activity (murder) approved the oil and gas lease anyway to set the tone of fear and intimidation for Descendants of African American Slaves owning land and mineral interest. There have been over 4,700 documented lynching recorded in the United States with over one half in the defendant states in this complaint.

An oil & gas lease agreement was presented to the Railroad Commission of Texas by the oil company wanting a permit to drill an oil well. It was signed by the white owners that took the land. The oil company examined the same information that plaintiff did knowing how the land was acquired did not matter, even if it was acquired illegally. The Railroad Commission approved it. John Doe never got 1 penny.

The RRC uses the power of government to strike fear, anxiety, and intimidate the least powerful Descendants of African American Slaves a protected group under the 1871 Sec. 1983 civil rights act in cases involving lease agreements with Oil & Gas companies in Texas. They have been approving leases and granting permits to drill for the oil & gas industry even when they know the oil company has committed a criminal act in filing a fraudulent lease in County Court where the well is located. The Texas Supreme Court has always ruled that the RRC of Texas has never had jurisdiction to approve leases creating an Ultra Vires violation in the State Government. Plaintiff's financial injury based on royalty interest is approximately $50,000.00.

**EXHIBIT B**

## 2. JUDICIAL INJUSTICE AND FEDERAL AGENCY DISCRIMINATION

Plaintiff Lee Perry herein incorporates the preceding paragraphs. The Hall family out of Burleson County Texas purchased 170 acres of land fee simple from the **United States Department of Agriculture** which is a federal government agency established in 1862. Plaintiff has a copy of the deed with the **USDA** as Grantor and the Hall Family as Grantee. Plaintiff also has a copy of the release of lien dated November 1950 from the **USDA** stating that the federal government agency was paid in full by the Hall family. The following month a wealthy white man filed adverse possession and was awarded the entire 170 acres immediately by the local County Court. The Hall family members including the children were escorted off the property by the County Sheriff. The **USDA** deed was presented in court. The **USDA** never intervened to say that the Hall family purchased the property from the federal government agency. With the RRC approval of a lease agreement the white family has been paid millions from the sale of minerals produced, in clear violation of 14th Amendment under **the color of state,** and they never had jurisdiction to do so. Plaintiff's financial injury based on royalty interest is over $250,000.00.

This same family had another tract of land that was purchased in 1872 by Erma Hall's great-grandfather Jacob Carrington. From 1872 to current there was never a sale to anyone. The tax records show payment by a family member every year for over 140 years. When an oil company came to drill, they got a permit to drill and put whatever amount that applied to that family in court until the family supposedly could be found. That oil company produced and sold $22,000,000.00 of oil & gas from the property. When plaintiff finally proved ownership. The current company had to pay their share only after a court case thru 3 different county courts.

The total amount due the royalty owners was approximately 2.5 million dollars. Texas property chapter 74 requires that the oil company turn the money in to the state. They never turn in one cent which allowed the oil company to keep $2,000,000.00, because the oil company said they did not know who to pay the royalty. We as operators always review the same title examination. It was obvious from first review that the money belonged to the heirs of Jacob Carrington. The oil company only have to say I looked for the owners to pay in good faith. An easy way to steal billions of dollars. It is also in violation of the 14th Amendment U.S.C., and 1871 civil rights act. Plaintiff's financial loss is approximately $200,000.00.

27

**EXHIBIT C**

### 3. FEAR, ITIMIDATION, AND CRIMINAL ACTIVITY

Plaintiff Lee Perry herein incorporates the preceding paragraphs. The William N. Godfrey family owned numerous tracts of land in Liberty County, Texas. The Liberty County Courthouse was burned to the ground in 1915 to intentionally destroy all the deed records on file. Liberty, Texas was also the headquarters for the Ku Klux Klan in Texas at that time. If you look at a county map that existed before 1915 that showed each tract of land and the name of the owner of each tract listed on the map you will see the names of the owners on each tract of land. If you look at the map drawned up after the fire you will easily see that every tract of land that was owned by a Descendant of African American Slave citizen in place of their name was unknown owner. Open season for any white person to contest the ownership. William Godfrey's widow wife a Black female and was not allowed to own land did not stand a chance. All her land is currently owned by white families. Blatant violation of the 14th Amendment. The RRC of Texas approved mineral leases that they knew had been taken through fear and intimidation, and in violation of criminal law. The Godfrey family and Plaintiff has lost millions from the sale of oil & gas minerals that they have not received one cent. Under **the color of state**, the RRC of Texas approved all the oil companies lease agreements. Plaintiff's financial loss based on royal interest alone is over $200,000.00

29

**EXHIBIT D**

#### 4. RACIAL ANIMUS, AND ULTRA VIRES BY RRC OF TEXAS

Plaintiff Lee Perry herein incorporates the preceding paragraphs. The Davis family out of Polk County Texas was ruled against by the RRC of Texas in several hearings that they did not own any mineral rights on property that had been in their family for over 100 years. They had always lived on the land and paid taxes. **Under the color of state**, the RRC of Texas a state agency ruled that several oil companies be granted permits to drill numerous wells and not have to pay the Davis family any royalties. Plaintiff helped the Davis family get a title examination and proved that they had always owned 100% of the mineral and surface rights to their land. Plaintiff reviewed the exact same information as the oil company on file in the County Courthouse.  The oil companies with the assistance of the racist RRC cost them millions in royalties. Those Companies are now out of business. Blatant violation of the 14th Amendment. Plaintiff's financial loss based on royalty interest alone is over $1,000,000.00.

**EXHIBIT E**

## 5. JUDICIAL INJUSTICE AGAINST BLACK FEMALES

Plaintiff Lee Perry herein incorporates the preceding paragraphs. Maggie Thornton and her family on her mother's side had land blatantly taken by a white man using adverse possession. He physically lived in Galveston County and never lived in Leon County. The county court judge awarded him 50 acres out of their 130-acre tract of land that they lived and paid all taxes for over 50 years. The award was made simply because he was white, and her mother was a black female. He has since been paid hundreds of thousands of dollars by oil & gas companies for his mineral interest. The RRC **under the color of state** approved the lease of the current oil company. 14th. Amendment violation. Plaintiff's financial injury based on royalty interest alone is over $500,000.00.

**EXHIBIT F**

**6. FEAR, INTIMINADITION BY PRIVATE ENTITY, ASSISTANCE BY FEDERAL AGENCY**

Plaintiff Lee Perry herein incorporates the preceding paragraphs. The T. A. Sims family on his mother (Harper family) side was blatantly cheated by the all-white owners of oil companies that drilled and produced oil and gas on their land in east Texas. The area had the number one producing oil well in the world at one point. The operator of most of the wells was also the brother of the Sheriff of that county. Fear, intimidation, and assistance from the RRC in favor of the Oil & Gas Companies that still have not paid. The power of government to strike fear and anxiety and to intimidate the least powerful among us. Monies from the sale of the oil & gas produced was put into a trust account in Marshall National Bank. The Bank failed **The FDIC a federal agency** as of December 2018 states that the trust account was transferred to Chase bank. Chase has denied that they have the millions that should be in the trust account. Another in your face blatant violation of 14th Amendment rights. Plaintiff's financial injury based on royalty interest alone is over $2,000,000.00.

35

**EXHIBIT G**

**7. ULTRA VIRES BY RRC OF TEXAS**

Plaintiff Lee Perry herein incorporates the preceding paragraphs. The Fields family out of Brazoria County that is trying to this day to get a trust account that contains their ancestor Tommie Fields monies released from the hundreds of wells drilled in the Old Ocean Field located in Brazoria County, Texas. Various oil companies have drilled and produced millions of barrels of oil & gas from the Old Ocean Field. None of the descendants of the original mineral interest owner have been paid any royalty. Under **color of state** the royalty interest has been placed in a trust account that is controlled by the state of Texas. Plaintiff's financial injury based on royalty interest alone is over $2,000,000.00.

37

# EXHIBIT H

**Reparations Federal Court MDL-1206**

Plaintiff Lee Perry herein incorporates the preceding paragraphs.  Plaintiff filed a brief in Federal District Court Northern District Fort Worth, Texas No. 4-18MCOO11 April 30, 2018 to get the list of all the names from the settlement of Federal Court Case MDL-1206. The request was for all the names on checks that had been returned to the Administrator as unclaimed. Plaintiff have a material interest in several leases outside the state of Texas. All the monies for all states except Texas was given to charity by the court. None of over 30 states decided to appeal that decision. Texas was the only State to appeal, win and keep the money for all checks that had a Texas address on them.

Texas cause of action was they make interest on all Texas residents unclaimed money held by the state. Without the names and identity of the tract of land and the names of wells for each check at least a million acres of mineral rights will be for ever loss to the Descendants of African American Slaves for which I am one of those descendants.

The state of Texas has not put out a statement about the existence of the MDL-1206 checks which they are holding only for the purpose of getting interest on the total amount. We as the Descendants of African American Slaves will lose thousands of acres of mineral rights if we do not claim the checks identifying the tracts of land and wells related to each check. There are over 287,000 checks that have been waiting to be claimed for over 9 years.

Plaintiff has a material interest in all the mineral rights that were knowingly and intentionally taken **under the color of state** from the few separate families listed in this complaint. There are too many to include all families in this complaint. Adverse rulings were made by the Railroad Commission of Texas, The Office of Conservation of Louisiana, and the Office of Conservation of Mississippi against the descendants of African American slaves by the government agencies as defendants in this lawsuit. It is too many to list all. Plaintiff will show how my material interest was taken, a pattern and practice of racial discrimination within the rulings and decisions, and how each of the defendants under the color of state in violation of plaintiff's rights under the 14th. Amendment of the U.S. Constitution, and under 42 U.S.C. Sections 1983. The violations are systematic and done to disenfranchise citizens, strike fear and anxiety and intimidate the least powerful among us. It has produced Racial Animus, and Illusionary Truth in the Oil & Gas producing southern states of the United State.

Texas RRC a state government agency has knowingly and intentionally violated the 14th Amendment rights of the residents of African American Slaves along with white oil & gas operators under color of state by taking an unsigned mineral interest owner royalties when a well is drilled an giving the right to keep plaintiff's share of money to the private entity oil company until the private entity oil company says I have kept enough. It is rare that the mineral interest owner ever receives one cent for not signing a lease agreement. There is no statement in any oil & gas lease agreement plaintiff has seen in 47 + years   that says if the mineral interest owner do no sign the agreement the oil company will have a legal right to keep the mineral interest owners share of royalty monies until the oil company decide that it is time to start paying the mineral interest owner. A direct violation of 14th Amendment due process rights.

**EXHIBIT I**

## 9. RACIAL DISCRIMINATION BY RRC STATE AGENCY AND ENVIRONMENTAL PROTECTION

## AGENCY FEDERAL AGENCY

Plaintiff Lee Perry herein incorporates the preceding paragraphs.  Plaintiff paid into the RRC account a $25,000.00 cash bond to take over operation of 3 wells that had been abandoned for over 30 years and as per well test taken in 1999 was leaking oil and radiation into the public drinking water system. They needed immediate repair. A copy of the 1999 test along with a copy of a 2009 internal report on RRC letterhead stating that **the subject wells are still leaking and represent a threat of injury to the public health** are part the index of this brief. The subject wells were located several blocks from a community that was drinking well water from the underground aquifer.

The white oil & gas company that operated other wells in the same area that knew of the leaking wells requested to the RRC that they did not want plaintiff operating any wells in the same area they were in. Under **the color of state,** the RRC denied plaintiff application to take over operation of the leaking wells, even though plaintiff had submitted a cashier's check for $25,000.00. Their claim was plaintiff did not have a valid lease. Their claim was they had both primary and exclusive jurisdiction to make that judgment.

The Federal Department of Health conducted a study to determine what zip code in the entire United States of America had the most citizens with cancer. The zip code that these three wells were in and the adjacent zip code were in that top 5 of zip codes with high cancer cases.

The EPA came out and tested the drinking water and found 3 times the normal limit of radiation in that zip code.

Blacks represent 95% of the population of the 2 subject zip codes.

Plaintiff filed suit in Federal Court to force the RRC to let plaintiff take over operations and repair the wells. Civil Action No. A-15-CV-0111-SS

The District Court Judge ruled in favor of the RRC that they had primary, and exclusive jurisdiction both jurisdiction to deny plaintiff the right to take over even though plaintiff filed claiming that the EPA had jurisdiction because the wells were contaminating public drink water, and represented a threat of injury to the public health as stated in the 2009 report in violation of the federal Safe Drinking Water Act.

Plaintiff appealed to the Fifth Circuit which said they did not know who had jurisdiction letting the district court decision stand.

A bus load of Black citizens that lived in that community currently with cancer and the families of those that had already died attended a Sunset committee hearing to request assistance. Plaintiff was the very first person to sign up to speak that morning at 8 a.m. in the morning. Plaintiff along with the rest of the Black group were not allowed to speak until 9 p.m. that night when only a few people were left.

The EPA never intervened even though Plaintiff personally gave them a copy of the Appeals Report.

In Texas State District Court Forest Oil Corporation V. El Rucio Land and Cattle Company.  A white man filed a civil lawsuit against Forest Oil Company for giving him pipe pulled from a well that was contaminated with radiation. Same as the contaminated pipe in the Black Community zip code 77013, and 77014 case.

The Railroad Commission intervened and said the oil company was not responsible for the white man's cancer that required amputation of one of his legs.

In 2007 the Texas Supreme Court ruled 9-0 in favor of the plaintiff a white man, and in that 9-0 ruling stated that the RRC had never had exclusive or primary jurisdiction to make a ruling on an environmental contamination issue. The Texas Supreme Court also pointed out the fact that 90% of the campaign money received by the Commissioners when they are running for office is donated by the oil & gas industry.

The white man was awarded 16 million dollars.

The black community wasn't even given an apology, and no compensation for the hundreds that have already died, and others waiting to die. Blatant violation of the 14th Amendment of the U.S. Constitution **for life** by a racist state agency that was making rulings they have never had jurisdiction to make in order to satisfy their money donors.

All of this could have been avoided if the EPA would have performed their duty of protecting the safety of that Black Community's drinking water.

Plaintiff had always visited that community to eat food prepared with their water, and drink water at the home of friends that live and died from cancer. Plaintiff now have suffered personal injury and is claiming compensation for **personal medical injury** permitted by law. Plaintiff lives in the adjacent community. The water tower has been closed, because the inside is to contaminated with radiation to use as storage still stands as a reminder. Plaintiff's physical injuries for drinking watered contaminated with radiation are cannot be computed and will have to be determined by a jury.

**EXHIBIT  J**

43

**10. JUDICIAL INJUSTICE BLACK FEMALES DID NOT STAND A CHANCE**

Plaintiff Lee Perry herein incorporates the preceding paragraphs. Jane Doe was sued for land that she had grew up on from a child, paid taxes, and still lived on when she was sued to vacate by a wealthy white family in Burleson County, Texas. The white family's claim was that her brother sold them the land before he died. The White family had a deed typed sideways on legal paper and no signature by anyone on it. The seller or the buyer signature is nowhere on the fraudulent deed used as evidence. It was so fraudulent that the County Clerk filed a notice to the District Court handling the case that she would not accept it as a valid document in the deed records of the County Courthouse. The District Court judge accepted it anyway and ruled in favor of the white family. The Black Jane Doe was evicted, and with the RRC assistance every well drilled on that land has paid all the royalty to the white family. Plaintiff's financial injury based on royalty alone is over $200,000.00

**EXHIBIT  K**

**11. Racial Discrimination & Violation of Federal Cemetery Law**

Plaintiff Lee Perry herein incorporates the preceding paragraphs. Geneva Hicks a single Black Female has spent years fighting through the maze of RRC approvals to oil companies to drill and produce on her land in Leon County, Texas on which she has deeds to, but can never get the oil companies to commit to paying. The family cemetery that have all their ancestors buried in it is also part of an oil & gas lease. The white landowner of a so-called private road put a locked gate to deny the black family access to the gravesite. The oil company along with the RRC have effectively taken the graves of the descendants of slaves. They have not been paid 1 cent; therefore, plaintiff is not receiving any royalty payments. They also cannot visit the graves in the cemetery, because the white surface owner along with the county sheriff enforcement has denied her a right to visit the family cemetery. Plaintiff's financial injury based on royalty interest alone is over $250,000.00.

46

**EXHIBIT  L**

**12. FEAR, INTIMIDATION, JIM CROW**

Plaintiff Lee Perry herein incorporates the preceding paragraphs. The Roby Estes family in Lee and Washington Counties Texas Grandfather was listed on the U.S. Census as a Milatto meaning that he had a white father and a black mother. Deed records show that he purchased several hundred acres of land during his marriage before he died intestate meaning that his share of land would go to his children under Texas Heirship law of 1856 that is still the supremacy heirship law used in Texas. Instead of even half going to his **wife**, or **children**. All his land ended up back with his white father's white family with none going to his children, or **by law his wife**. With assistance from the RRC millions of dollars of oil & gas royalties have been paid to the wrong recipients. Plaintiff's financial injury based on royalty interest alone is over $500,000.00.

**EXHIBIT  M**

### 13. JUDICIAL DISCRIMINATION AND ULTRA VIRES BY RRC

Plaintiff Lee Perry herein incorporates the preceding paragraphs. The Eckford family is a prime example of how much land and mineral rights we the descendent of African American Slaves have lost. Their grandfather died intestate in 1896. Immediately upon his death half of his estate went to his children. His wife supposedly sold all the land owned by him to a white family before she died. By law she could only sell half, because the other half went to his children upon death. This case is still in District Court. It has already been to Appeals Court reversed and remanded back to the district court in favor of the Eckford family. (Fourth Court of Appeals No. 04-16-00252-CV Filed November 22, 2017). The Defendants a white family is still trying to get the Black family to accept a settlement. It is over. The time for appeal to the Supreme Court elapsed over a year ago. Because they are white, and this case involved a huge oil company that followed the law against the RRC and the white family they refuse to follow the law in district court. They are refusing to follow the heirship law that was established in 1856. The 1856 law for all Texas residents has been consistently violated against Black U. S. Citizens 14th Amendment rights under **the color of state**. That same heirship law is still supreme and with over 160 years of precedent is being used in favor of a black family. The RRC had already approved a lease by Texas Oil & Gas Company (now Marathon Oil Corporation) in 1978 that paid the white family all the oil & gas money. The exact same information used in Texas Oil & Gas title examination was approved by the RRC which had neither exclusive nor primary jurisdiction to approve a lease and totally ignore the 1856 Heirship supreme law. Texas Oil and Gas Inc. had the exact same information that was used in the current court case. ConocoPhillips Corporation acquired Burlington and instantly because a part of the collusion to make sure that the white family end up being the only future beneficiaries. As their abitrator they appointed one of their employees that is married to one of the white defendants. The attorneys that mis-represented the Descendants of African American Slaves immediately advised them to take a $500,000.00 settlement. Every well in that field was making at least $1,000,000.00 a month. One month's royalty would be more than the total offered each Eckford. Lastly ConocoPhillips held the production down until the white family had acquired most of the DAAS interest. The very next month as their part in the collusion raised the production from approximately 4,000BBL/month to 41,000,00BBL/month. Conoco/Phillips knowingly, and intentionally held the production down to ensure that the white family would still get most of the royalties in the future, and the DAAS family have at least $20,000,000.00 in financial damages. This black family is an example of the discrimination that currently exist in Texas by a state agency that receives over 90% of their campaign contributions from the oil & gas industry. Plaintiff's financial injury based on royalty interest alone is over $1,000,000.00.

**EXHIBIT N**

## 15. MISSISSIPPI RACIAL DISCRIMINATION

Plaintiff Lee Perry herein incorporates the preceding paragraphs. C. L. Jackson out of Liberty, Mississippi had a second horizonal well drilled to a depth of 10,500 ft. completely across his property. While holding valid conversations about the lease bonus to be paid at the state office of conservation the oil company starting drilling before he could sign a lease. He will now have to pay the oil company approximately 2.6 million dollars be fore he will start receiving any royalties. He will never get a dime. He was blatantly deceived by the oil company with knowledge about the deception known by the office of conversation. The first well drilled on his property was drilled to only 2,000 feet. **In that area at 2000 ft. is only water**. The oil company only told him we did not find any oil. The oil company never told him that they only drilled to 2,000 ft., and never expected to find any oil, only to deceive him about having any oil on his land. No state has the right to take a citizen's property and give that property to a private entity under the **color of state**. The state of Mississippi 300% rule is in violation of Plaintiff's 14th Amendment rights. Under due process a private entity (Encana Oil & gas Company) does not state anywhere in the oil & gas lease that if you do not sign that lease all of your minerals and monies from the sale of oil & gas produced and sold will be taken as punishment and given to the oil company as a reward forever, or until the oil company decides that he has enough of a citizen's money.

The formation is the Tuscaloosa Trend and is found at approximately 10,500 ft. beneath the surface. It is one of the most productive formations in the entire United States of America.

To eliminate all of the Black out of state mineral interest owners of which Plaintiff is one , Mississippi just passed a new law that states if land does not have any production for 10 years the mineral interest will be taken and given to the surface owners which are 97% White in rural areas where all wells are drilled, and is where the Tuscaloosa Trend is located. Plaintiff's financial injury based on royalty interest alone is over $1,500,000.00.

**EXHIBIT O**

53

**Fear and intimidation being a Black Female**

Plaintiff Lee Perry herein incorporates the preceding paragraphs: The Joseph Pullin family out of Gonzales County, Texas owned 480 acres of land as per deed records in 1916. Joseph Sr. died in 1921 leaving his estate to his wife and children. As per deed records his wife or children never had access to the 480-acre tract of land. Out of fear for her life from hostile white neighbors they were made to vacate immediately. There had already been 8 documented lynching in Gonzales and neighboring Counties after the Johnson lynching in Chattanooga Tennessee leaving the property to be taken over by adverse possession (a Jim Crow law that is still used to take the Descendants of African American Slaves land and mineral rights). His wife ended up spending the rest of her life living with her children in a barn. On the current map it is clear to see that numerous wells have been drilled with the descendants receiving no royalty payments. Each lease agreement was approved by the RRC of Texas knowing that they were fraudulent in violation of the 14th Amendment rights of equal protection, taking of property, and mineral rights under color of state and 42 U.S.C. 1983.

*54*

**EXHIBIT  P**

**FEAR AND INTIMATION OF FEMALE DECENDANTS OF AFRICAN AMERICAN SLAVES**

Plaintiff Lee Perry herein incorporates the preceding paragraphs. County court records state that the Mayberry family in Brazoria County, Texas on their mother's side whose maiden name was Lee owned approximately 600 acres of land in the subject county. Oil companies discovered oil in the Old Ocean Field and started drilling operations in the 1930's. Hundreds of wells have since been drilled by former and current members of the American Petroleum Institute. With assistance from the RRC of Texas illegal drilling permits were granted to oil companies that allowed the oil companies to never pay the Mayberry (Lee maiden name) any royalties. The current operator Hilcorp Energy Company with assistance under color of state by the RRC of Texas is still following the same systematic pattern of discrimination in violation of 42 U.S.C. $ 1983. Plaintiff financial loss based on royalty interest is over $ 1,000,000.00.

STATE OF TEXAS        §

COUNTY OF HARRIS  §


Before me, the undersigned notary, on this day personally appeared Lee Perry, the affiant, whose identity is known to me. After I administered an oath, affiant testified as follows:

1. My name is Lee Perry. I have over 47 years of Oil & Gas experience. Most of my experience has been reviewing money issues that are related to the individuals of lessors of mineral leases.

2.Several state agencies, and the oil & gas industry have followed a systematic pattern of discrimination and collusion to make sure that DAAS will never receive their correct share of money from any oil & gas situation that involve huge royalty payments.

3. **Taking a current case that has already been to the appeals process in favor of the DAAS plaintiffs (No.04-16-00252-CV Fourth Court of Appeals, San Antonio, Texas.**

4. Burlington Resources Oil & Gas Company decided to follow the law. The 1856 heirship law that is still the supreme heirship law in Texas. (over 160 years). They also decided to follow the U.S. Constitution 14th Amendment, or specifically

the 1871 sec.1983 civil rights act. They decided to put half of the royalty proceeds in a trust account in court until they could find the heirs of the last known owner of half of the minerals of a 147-acre oil lease.

5. A white family claimed all the mineral rights and filed a lawsuit to get all the royalty proceeds. The white defendants claiming all the land and mineral rights by deed lost in district court tried to come back with adverse possession and lost again in Appeals Court.

6. During the legal proceedings ConocoPhillips acquired Burlington, and appointed a neutral negotiator, because the white family did not want to accept the Appeals Court opinion. Why are you not following the court order? The white family lost. The DAAS family should get half of the monthly royalties. ConocoPhillips's negotiator was **married** to one of the defendants. No help to the DAAS family.

7. The law firm representing the DAAS family Jones & Gill convinced them that they should take a $500,000.00 settlement. They are a part of this corrupt scheme as the others. A total fraud.

8. The realty of the money involved is ConocoPhillips **knowingly and intentionally** held the production down from the wells until they could get most of the Eckfords to accept a settlement that the Appeals Court, **ruling on the law, and**

2

**the U.S. Constitution** said the DAAS family should be paid, and not what the white family wanted.

9. The very next month the volume went from 4,000/bbl. oil a month to 41,000/bbl. oil a month. To make sure that the white family will always receive most of the money. Both ConocoPhillips and the attorneys representing the DAAS family were active participants in the deception against court orders to make sure that the white families receive most of the royalty proceeds. All you had to do was look at the volume of every other well in that field.

10. The actual settlement if any should have been no less than $20,000,000.00 for the DAAS family. **A $19,500,000.00 financial loss to the DAAS**. This is common and clearly shows how we have lost 14,000,000 acres of land and mineral rights.

11. On the witness stand at a RRC hearing in November 2018 I stated that the Defendant Oil companies committed a felony criminal act to rob the Plaintiff DAAS from receiving any royalties from wells being operated by Defendant oil companies on their land. A copy of the felony crime they committed to rob the DAAS family is attached to this Sworn Affidavit.

12. This oil company had committed a felony criminal act when they filed in the county courthouse of Shelby County, Texas a lease agreement signed notarized, and filed in 2006. The Administrative Judge the oil company and I had a

3

copy of the person signing the lease in 2006 death certificate proving that he had already died in 1994.

13. The Oil companies committed a felony criminal act. From that point to the hearing they had made over $3,000,000.00 from the sale of oil and gas produced on that lease. They had not paid the DAAS at the hearing not one penny.

14. The RRC of Texas ruled that the oil company could keep the money that that had made from the criminal act and stay as the operator of that well and keep on making illegal money. Their reasoning was they believe the oil company committed the felony crime in good faith.

15. Try robbing a bank and see if the judge let you keep the money and not be prosecuted, because you committed the felony act in good faith! As an oil & gas operator I am aware of the corruption, and totally displeased at the government agencies that let the bad oil companies be rewarded when they commit criminal acts that would send a citizen to prison.

16. As a Joint Venture Auditor, I have personally witnessed situations like the ones above so often that it is very clear for being the number reason why African-Americans have lost 14 million acres of land and mineral rights and royalties.

Name of affiant

4

## VERIFICATION

SWORN TO AND SUBSCRIBED before me by LEE PERRY on December 6, 2019.



_____
Notary Public in and for
the State of Texas

HEATHER HOLMES
_____
Printed Name of Notary

HEATHER HOLMES
131361523
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
NOVEMBER 27, 2021

5